UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RR RESTORATION, LLC a/a/o
Amblewood Condominium
Association, Inc.,

        Plaintiff,

v.                                              Case No:  2:21-cv-866-JLB-NPM

EMPIRE INDEMNITY
INSURANCE COMPANY,

        Defendant.
_____

## ORDER

        RR Restoration, LLC ("RR Restoration"), as the assignee of the Amblewood Condominium Association, Inc. ("Amblewood"), sues Empire Indemnity Insurance Company ("Empire") for breach of an insurance policy based on Empire declining to pay certain invoices sent by RR Restoration. (Doc. 3 at 3–4). Empire moved for summary judgment, claiming that RR Restoration only made a request for replacement cost value ("RCV") benefits and because the claimed repairs were not actually completed, Empire does not owe the "claimed anticipated, estimated replacement costs" for such repairs. (Doc. 31 at 1–2). RR Restoration maintains that it has made a proper claim for insurance benefits under the subject policy and that there is a genuine issue of material fact as to whether it made an actual cash value ("ACV") claim. (Doc. 43 at 1–2). Upon review of the record, Empire's motion is **GRANTED in part** and **DENIED in part**. A genuine issue of material fact

1

remains as to whether a request for ACV benefits were made under the policy. This is a factual issue that is best ferreted out by a jury should the parties not come to a settlement agreement.

## BACKGROUND

This case involves a property insurance claim arising from a Hurricane Irma loss that occurred on September 10, 2017. (Doc. 31 at ¶ 1; Doc. 43 at ¶ 1). Empire issued a commercial lines policy (the "Policy") to Amblewood, which was in effect from November 8, 2016 to November 8, 2017. (Doc. 3 at 14; Doc. 31 at ¶ 2; Doc. 43 at ¶ 2). The Policy covered nine buildings—each building with a separate insurance limit, premium, and deductible. (Doc. 3 at 16–18; Doc. 31 at ¶ 2; Doc. 43 at ¶ 2).

About a week after Hurricane Irma hit, Amblewood, on September 18, 2017, filed a claim alleging that Hurricane Irma damaged the property. (Doc. 31 at ¶ 3; Doc. 43 at ¶ 3). Two years later, on June 17, 2019, Amblewood assigned its rights under the insurance policy to RR Restoration. (Doc. 3-2 at 268–70; Doc. 31 at ¶ 5; Doc. 43 at ¶ 5). RR Restoration, as assignee, submitted nine anticipated repair estimates, one for each damaged building, though only eight estimates were attached to the Complaint. (Doc. 3-3 at 1–101; Doc. 31 at ¶ 6; Doc. 43 at ¶ 6). The parties agree that the estimate to repair the ninth building was provided by RR Restoration to Empire pre-suit. (Doc. 31 at 3 n.1). The estimated cost for all nine repairs totaled $5,739,324.68. (Doc. 31 at ¶ 6; Doc. 43 at ¶ 6). As they were not invoices for services rendered, each "estimate" was for, obviously, repairs not yet made. (Doc. 31 at ¶ 6; Doc. 43 at ¶ 6; Doc. 31-4 at 19).

In a letter dated December 7, 2020, Empire notified RR Restoration and Amblewood that the submission of anticipated repairs alone "[did] not trigger the Replacement cost provision under the policy," explaining that the policy "does not cover anticipated repair costs." (Doc. 31-1 at 4–5; Doc. 31 at ¶ 7; Doc. 43 at ¶ 7).

On October 8, 2021, RR Restoration filed a one-count complaint for breach of contract. (*See* Doc. 1). The Complaint was removed to federal court on November 19, 2021. (*Id.*).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018). An issue is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may be

properly granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants, LLC*, 631 F. App'x 817, 820 (11th Cir. 2015).

## DISCUSSION

To prevail at summary judgment on RR Restoration's breach of contract claim, Empire must show that there is no genuine issue of material fact as to (1) the existence of a valid contract; (2) a material breach of that contract; and (3) damages. *See Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999).

Replacement Cost Value ("RCV") coverage "provides protection to the extent of the full cost of repair or replacement without deduction for depreciation[,]" thus if an insured actually replaces or repairs the damaged property, she is "entitled to the full cost of that repair or replacement." Johnny Parker, *Replacement Cost Coverage: A Legal Primer*, 34 Wake Forest L. Rev. 295, 297–99 (1999). Indeed, it is well settled under Florida law that an insurance company is liable for replacement cost value upon completion of the damaged property's repair or replacement. *See Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007) ("[C]ourts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed.") (quoting *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983 (Fla. 3d DCA 1994)).

The concept of Actual Cost Value ("ACV") coverage, on the other hand, "recognizes that the insurer is entitled to deduct reasonable depreciation from the value of [a] loss" and the purpose of ACV is to "place the insured back in the position she enjoyed prior to loss." *Replacement Cost Coverage*, 34 Wake Forest L.

Rev. at 296. "Since most property depreciates with time, the formula, replacement cost new less depreciation, has, from an insurance industry perspective, become synonymous with actual cash value." *Id.*; *see also Breakwater Commons Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-31-JLB-NPM, 2021 WL 1214888, at *4 (M.D. Fla. Mar. 31, 2021) ("ACV equals RCV minus depreciation.").[1] The crux of Empire's argument in support of summary judgment is that RR Restoration cannot establish that Empire breached the Policy because its breach of contract claim is based solely on RCV and no repairs were ever made. (Doc. 44 at 1–2).

i. Replacement Cost Value

The Policy states that Empire will not pay on an RCV basis for any loss or damages "[u]ntil the lost or damaged property is actually repaired or replaced" and "[u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage." (Doc. 3-1 at 38). Accordingly, under the plain and unambiguous language of the Policy, RR Restoration would have to actually make

---

[1] Empire cites *New York Cent. Mut. Fire Ins. Co. v. Diaks*, 69 So. 2d 786 (Fla. 1954) for the proposition that "actual cash value is not, of course, synonymous with replacement cost, or even replacement cost less depreciation." 69 So. 2d at 788. But that court went on to say that "[t]hese considerations . . . do not negative consideration of the cost of reproduction of replacement as a factor in determining the actual cash value of property insured." *Id.* at 788–89. "The *Diaks* court indicated that, although not synonymous with actual cash value, replacement cost could be considered as one of the factors in determining actual cash value." *J & H Auto Trim Co., Inc. v. Bellefonte Ins. Co.*, 677 F.2d 1365, 1369 (11th Cir. 1982) (citing *New York Cent. Mut. Fire Ins. Co.*, 69 So. 2d at 788–89); *see also Worcester Mut. Fire Ins. Co. v. Eisenberg*, 147 So. 2d 575, 576 (Fla. 3d DCA 1962) ("[A]ny evidence logically tending to establish a correct estimate of the value of the damaged or destroyed property may be considered by the trier of facts to determine 'actual cash value' at the time of loss.").

the repairs to the property before being paid for them on a replacement cost basis. It is undisputed that the repairs have not been completed. (Doc. 31 at ¶ 6; Doc. 43 at ¶ 6).

Thus, because there is no genuine issue of material fact that no actual repairs were made under the plain language of the policy, there is no breach of the insurance contact. As such, Empire is thus entitled to summary judgment with respect to any claim for RCV damages. *See CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 192 (11th Cir. 2021); *Buckley Towers Condominium, Inc. v. QBE Ins. Corp.*, 395 F. App'x 659, 663 (11th Cir. 2010) ("Allowing [plaintiff] to claim RCV damages without repairing or replacing entirely removes the plaintiff's obligations under the Replacement Cost Value section of the contract. The parties freely negotiated for that contractual provision and it is not the place of a court to red-line that obligation from the contract."); *Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 573 (Fla. 1st DCA 2010) ("[C]ourts are not to 'rewrite' insurance contracts and should bear in mind that 'if a policy provision is clear and unambiguous, it should be enforced according to its terms.") (citing *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).

Accordingly, to the extent that the Complaint sought payment for an RCV claim (which Plaintiff denies), Empire's Motion is granted because repairs have not actually been completed.

6

    ii.    <u>Actual Cash Value</u>

The Court now considers if there is a genuine issue of material fact as to whether Plaintiff requested ACV damages from Empire pre-suit and pleaded such. Plaintiff argues that a jury could return a verdict for it on the issue of whether an ACV claim was asserted because "the estimates [attached to the complaint and] submitted pre-suit . . . necessarily include[] the ACV amount as the ACV is derived specifically from RCV." (Doc. 43 at 10). Defendant responds that ACV cannot be incorporated into the RCV estimates, that RR Restoration only submitted an ACV estimate *after* discovery ended, and that RR Restoration improperly seeks to change its claim too late in the game. (Doc. 44 at 4, 7–8). Defendant argues that if RR Restoration did not request ACV damages before the Complaint was filed, it would have to be dismissed because "[a]ll elements of a cause of action must exist and be completed before an action may properly be commenced." (Doc. 44 at 6 (citing *Hand Tax Advisory Grp., Inc. v. A.A.I.A., Inc.*, No. 8:05-cv-2305-T-27TBM, 2006 WL 8440168 (M.D. Fla. May 19, 2006))). Indeed, where it is clear that a plaintiff only demands RCV damages, courts have not allowed plaintiffs to "change the nature of [their] demand for payment by asserting, in [an] opposition to summary judgment, that the estimate contained both ACV and RCV values." *See Metal Prods. Co., LLC v. Ohio Sec. Ins. Co.*, No. 21-11612, 2022 WL 104618, at *3 (11th Cir. Jan. 11, 2022).

The Complaint contains one count as follows:

> Prior to the filing of this action, Plaintiff provided Defendant with an itemized description of the services required to return the Property to a "pre-loss" condition, as required by the Policy, but Defendant failed to pay the total

7

> amount owed for these services. The itemized description of services necessary to return the Property to a "pre-loss" condition is attached hereto as *Exhibit C*.

(Doc. 3 at ¶ 16).

Exhibit C to the complaint contains the estimates Plaintiff provided to make the necessary repairs to the Hurricane-Irma impacted buildings. (Doc. 3-2 at 5–101). The estimates, which are a part of the complaint, plainly include a line item, marked "ACV" and an associated dollar amount. (*See, e.g.*, Doc. 3-2 at 10, 22, 34, 46, 58, 70, 82, 94). It is unclear whether the ACV dollar amount suggests a depreciated damages amount in the estimate itself. But the Complaint's single count states that "[b]y failing to make complete payment to Plaintiff for the reasonable services rendered or to be rendered in connection with the Claim, Defendant breached the Policy." (Doc. 3 at ¶ 22). As will be explained, the Court holds that this allegation, along with the "ACV" noted on the estimates that are attached to complaint, along with the summary judgment record before the Court, create a genuine issue of material fact as to whether ACV damages were requested by Plaintiff pre-suit.

After Defendant filed its Motion for Summary Judgment, Plaintiff indicates that it "supplied the Defendant's counsel the updated estimates with depreciation in response to Defendant's MSJ and the ACV amount is $4,917,902.95." (Doc. 43 at ¶ 55). That amount is slightly less than the damages claimed in Plaintiff's Verified Answers to Defendant's First Interrogatories to Plaintiff. (Doc. 31-3 at 6 ("The subject damages are approximately $5,200,000.")). The submission of such

8

"updated" estimates implies that the estimates initially submitted were insufficient to make a precise ACV claim.

The Eleventh Circuit has considered a similarly situated set of facts. *See Buckley Towers Condominium, Inc.*, 395 F. App'x at 665–66. There, albeit in a post-trial motion, the Eleventh Circuit concluded that "the jury had sufficient evidence from which to reasonably find that [a plaintiff] had made an ACV damages request, and that it was entitled to ACV damages." *Id.* The Eleventh Circuit found that although the defendant showed that the plaintiff "may have submitted an inartfully drafted claim for damages," the jury could have found (and, in that case, did find) that the plaintiff sought ACV damages. *Id.* at 666. The Court views *Buckley Towers* as instructive and finds that a jury could find that RR Restoration sought ACV damages pre-suit.

First, each of the estimates attached to the Complaint contains a figure under the title, "ACV Total," which a jury could find put Empire on notice that RR Restoration was seeking ACV damages. (Doc. 3-2 at 10, 22, 34, 46, 58, 70, 82, 94); *see also Buckley Towers*, 395 F. App'x at 666 (finding that where a typewritten entry for cash value loss was next to the category "Actual Cash Value Loss, . . . the insurance company [was arguably put] on notice that the insured was seeking actual cash value").

Second, Defendant emphasizes that the estimates did not apply depreciation. (*See* Doc. 44 at 3). Indeed, depreciation is "necessarily part of actual cash value damages." *Buckley Towers*, 395 F. App'x at 666 (citing *Goff v. State Farm Fla. Ins.*

9

*Co.*, 999 So. 2d 684, 689 (Fla. 2d DCA 2008)). And Defendant points to the fact that the Policy requires Plaintiff to "elect" to make a claim for ACV instead of repair costs and that RR Restoration elected its remedy by presenting the anticipated repair costs and not presenting depreciated amounts. (Doc. 31 at 18 n.10); *see also* (Doc. 3-1 at 38 ("In the event you elect to have loss or damage settled on an actual cash value basis . . . .")).[2] But the Policy does not require the claimant to include depreciation in its *initial* proof of loss and does not even explain that depreciation is an element of a claim for ACV. (*See* Doc. 3-1). Accordingly, Empire's interpretation would necessarily add a new term to the insurance contract, which this Court cannot do. *See Buckley Towers*, 395 F. App'x at 666 (citing *Royal Ins. Co. v. Latin Am. Aviation Servs., Inc.*, 210 F.3d 1348, 1351 (11th Cir. 2000)) (where insurance contract did not affirmatively obligate insured to include depreciation in its initial proof of loss and did not explain that depreciation was an element of ACV, Eleventh Circuit found that imposing the obligation to set forth depreciation in the initial proof of loss "would add a new term to the insurance contract"). Accordingly, RR

---

[2] The Court notes that Empire's Motion for Summary Judgment makes the argument that Plaintiff failed to request ACV. (*See* Doc. 31 at 18). That motion was, of course, filed before Plaintiff responded to it. As such, the Court has pause accepting Empire's contention that it was blindsided by Plaintiff raising ACV for the first time in its response. It seems Plaintiff's request (or lack thereof) for ACV was on Empire's radar as an issue that needed to be addressed even before Plaintiff filed its response. Although certainly not dispositive for the purposes of this motion, the Court notes this to underscore that a genuine issue of material fact remains as to whether Plaintiff requested ACV. Counsel for Empire seemed to think it was an issue, since they included this argument in Empire's Motion for Summary Judgment.

10

Restoration's failure to include depreciation in its estimates does not support a finding for summary judgment in Empire's favor.

In reaching its conclusion, the Court also considers the testimony of Dennis Kariores, a representative of RR Restoration who states that he "essentially run[s] . . . the company outside of the owner." (Doc. 31-4 at 27). Mr. Kariores explained that he presented the "RCV version" of the estimates, but that those estimates could easily be converted to an "ACV version." (*Id.*). The Court cannot find that this testimony resolves the issue of material fact as to whether Plaintiff requested ACV damages pre-suit.

The Court further acknowledges that Empire informed RR Restoration, as early as December 2020, that it viewed the estimates as "anticipated repair costs." (Doc. 31-1 at 4). But the Declaration of Dennis Kariores indicates that "[a]t no point during RR Restoration's involvement in the claim did [Empire] request any estimates for ACV value only or clarification as to the damages related to the subject claim." (Doc. 43-1 at ¶ 6). Rather than clearing up the issues of material fact revealed above, these competing pieces of evidence merely highlight that a genuine issue of material fact remains.

    iii.   <u>Damages Calculation</u>

Defendant asks that if the Court denies Empire's Motion for Summary Judgment, "it should find the most RR [Restoration] can recover from Empire is $606,938.34, before depreciation and the deductibles, as stated in RR's initial

11

disclosures." (Doc. 31 at 5 n.3). Defendant claims that Federal Rule of Civil Procedure 37(c) would bar any other amount or theory of recovery. (*Id.*).

Federal Rule of Civil Procedure 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether a failure to disclose evidence is substantially justified or harmless, courts consider "the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information has been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citation omitted). Some district courts have also applied a multi-factor test to determine whether non-disclosure is harmless. *See, e.g.*, *Mortg. Payment Prot., Inc. v. Cynosure Fin., Inc.*, No. 6:08-cv-1212-ACC-GJK, 2010 WL 11507658, at *2 (M.D. Fla. Nov. 5, 2010) (citation omitted) (stating factors as "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice"). The Eleventh Circuit has not settled the meaning of harmlessness under Rule 37 and its relationship to prejudice. *Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co., Ltd.*, 993 F.3d 1299, 1307–08 (11th Cir. 2021).

The Court cannot find that an omission by Plaintiff's attorney in the original Rule 26 disclosures was anything but harmless. Empire knew about the estimates attached to the Complaint and indeed received such estimates pre-suit. (*See* Doc. 31 at 3 n.1 ("The Complaint only attaches eight estimates, however, pre-suit RR provided Empire with nine estimates, one for each building.")). The amended Rule 26 disclosures were provided on February 21, 2023, well before any trial. (Doc. 44-1 at 7). But, in any event, given Empire's knowledge that the damages requested exceeded $5,000,000 (*see* Doc. 31 at 3), Plaintiff was not obligated to provide corrected information. Fed. R. Civ. P. 26(e), *Advisory Committee Notes* ("There is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process.").

Accordingly, the Court finds that Plaintiff's failure to include the total amount of damages in the initial Rule 26(a) disclosures was harmless. It is wholly perplexing to the Court that Empire would somehow believe damages sought here were merely the damages sought for only one of the buildings at Amblewood.

*-Remainder of page intentionally left blank-*

## CONCLUSION

For the foregoing reasons, Empire's Motion for Summary Judgment (Doc. 31) is **GRANTED in part** and **DENIED in part** as set forth herein.

Empire's Motion to Strike Expert Witnesses, Steven Thomas and Irving Abcug (Doc. 30), is **DENIED without prejudice** to being asserted as a motion in limine in accordance with the dates set forth in the Court's Amended Case Management and Scheduling Order (Doc. 46).

Should this case proceed to trial, the Court intends to conduct the trial in the Tampa Division's courthouse. The parties should advise the Court if they would prefer the case be tried in the Fort Myers Division's courthouse by filing a notice stating such on or before August 9, 2023.

**ORDERED** at Fort Myers, Florida on July 26, 2023.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE